IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MANHATTAN CONSTRUCTION
COMPANY,

                        Plaintiff,

        v.                                          1:06-cv-1512-WSD

MCARTHUR ELECTRIC, INC.,
and GREAT AMERICAN
INSURANCE COMPANY,

                        Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Manhattan Construction

Company's ("Manhattan" or "Plaintiff") Motion to Dismiss Counterclaim of

Defendant Great American Insurance Company ("Mot. to Dismiss Great American

Counterclaim") [10], Plaintiff's Motion to Consolidate ("Mot. to Consolidate")

[12], and Plaintiff's Motion to Strike and/or Dismiss Counterclaim of Defendant

McArthur Electric, Inc. ("Mot. to Dismiss McArthur Counterclaim") [13].

## I.      BACKGROUND

This case involves a construction dispute concerning West Cobb #1 High

School, now known as Hillgrove High School.  In April 2004, the Cobb County

School District ("CCSD") hired Plaintiff Manhattan as the general contractor to build the new school.  In May 2004, Plaintiff entered into a subcontract with Defendant McArthur Electric, Inc. ("McArthur") to perform electrical work on the project.  Defendant Great American Insurance Company ("Great American") issued a performance bond to insure McArthur's performance on the project.  The performance bond named Plaintiff as the obligee.

During construction, disputes arose between Manhattan and McArthur over the schedule for completion of McArthur's work.  In January 2006, Manhattan added another electrical contractor, Cleveland Electric ("Cleveland") to perform electrical work on the project, and on three separate occasions declared McArthur in default of its subcontract obligations.  In April 2006, Manhattan terminated McArthur, and Manhattan asserted a claim against the bond issued by Great American.  Great American refused to insure McArthur's performance under the bond.

On June 23, 2006, Plaintiff filed this action against McArthur and Great American ("the Manhattan Action").  Plaintiff claimed that McArthur failed to provide adequate manpower to the project and did not comply with Manhattan's construction schedule.  As a result, Plaintiff claimed that McArthur delayed

completion of the project, which required Manhattan to engage Cleveland to perform and repair work that was McArthur's responsibility under the subcontract. Plaintiff asserts two claims in this action: one for breach of contract against McArthur, and one against Great American for refusing to fulfil its obligations under the performance bond.  (Compl. [1].)

On July 26, 2006, Great American filed its Answer and Counterclaim.  Great American denied owing any obligation to Plaintiff under the performance bond and asserted a Counterclaim against Plaintiff for breach of contract and for recovery under Georgia's Prompt Pay Act.  (Great American Answer and Counterclaim [6].)

On August 2, 2006, McArthur filed its Answer and also asserted a Counterclaim against Manhattan.  McArthur alleged in its Counterclaim that Manhattan refused to keep McArthur apprised of the construction schedule, wrongfully terminated the subcontract, and refused to pay McArthur for work it performed.  (McArthur Answer and Counterclaim [9].)  McArthur also claimed that in order to receive payment from the CCSD, Manhattan falsely swore on its payment requests submitted to CCSD that Manhattan had paid in full for all subcontract work.  In its Counterclaim, McArthur asserted fourteen separate claims against Plaintiff, including: breach of contract, substantial default under the

contract, wrongful repudiation, enforcement of equitable lien and constructive trust, conversion, tortious breach of contract, fraud and deceit, quantum meruit, restitution, set off and recoupment, breach of duty to swear truthfully, violation of the Georgia Prompt Pay Act, attorney's fees and punitive damages.

On July 10, 2006, McArthur filed a lawsuit in the Superior Court of Cobb County ("the McArthur Action") against Manhattan's labor and material bond sureties–Federal Insurance Company ("Federal"), Fidelity and Deposit Company of Maryland ("F&D"), and Zurich American Insurance Company ("Zurich") (collectively "the Manhattan Sureties").  McArthur's claims are based on the same construction project which is the subject of this action.  McArthur alleges that it performed $3,335,006 worth of electrical work for Manhattan on the school project, but was not paid in full for its services.  McArthur alleges further that Manhattan misrepresented to the CCSD that it had payed in full for the work, even though Manhattan had not paid McArthur for the work it claims it performed on the project.  Seeking reimbursement from the Manhattan Sureties, McArthur claims that Manhattan still owes McArthur more than $1 million for electrical work it performed.  On August 9, 2006, the Manhattan Sureties removed the

McArthur Action to this Court based upon diversity jurisdiction.  The removed action was given the civil action number 1:06-cv-1870.

On August 15, 2006, Manhattan filed its Motion to Dismiss Great American's Counterclaim.  Manhattan argues that because Great American has not made any payment under the performance bond, it is not entitled to assert the equitable doctrine of subrogation to allege claims against Manhattan.  Three days later, on August 18, 2006, Manhattan filed a Motion to Consolidate this case with the McArthur Action.  On August 21, 2006, the Manhattan Sureties also filed a motion to Consolidate the McArthur Action with this action.  On August 22, 2006, Manhattan filed a Motion to Dismiss McArthur's Counterclaim, arguing that many of McArthur's claims fail to state a claim upon which relief can be granted.

## II.    DISCUSSION

### A.    Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well settled.  Dismissal of a complaint is appropriate only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

"Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

B.     Manhattan's Motion to Dismiss Great American's Counterclaim

Manhattan moves the Court to dismiss Great American's Counterclaim, which asserts claims for breach of contract and violation of Georgia's Prompt Pay Act.  Manhattan argues that Great American did not undertake any obligation under the bond, therefore it cannot assert a claim under the equitable doctrine of subrogation.  (Mot. to Dismiss Great American Counterclaim [10], at 2.)  Great American argues that its Counterclaim should not be dismissed because it has the right to "step into the shoes" of its principal, McArthur, and assert any claim

McArthur might have against Plaintiff.  (Great American Resp. to Mot. to Dismiss, at 6.)

The nature of subrogation is well-settled:  "Subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to all the rights of the creditor. It is of equitable origin, being founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the parties, and its object is the prevention of injustice."  Bank of Danielsville v. Seagraves, 167 Ga. App. 135, 140 (Ga. Ct. App. 1983).  "A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor.  Hence, legal subrogation arises as a matter of equity without any agreement to that effect, and conventional subrogation depends upon contract, and upon payment of the debt of another one is entitled to the securities and rights of the creditor so paid."  Id.

Georgia courts have explained:  "To employ an oft-cited metaphorical expression, subrogation places the subrogee in the shoes of the subrogor. Consequently, the rights to which the subrogee succeeds are the same as, and no greater than, those of the subrogor; therefore, the subrogee's rights are subject to any limitations incident to them in the hands of the subrogor, and subject to any

defenses that might have been urged against the subrogor." Franco v. Cox, 265 Ga. App. 514, 516 (Ga. Ct. App. 2004).  One requirement, however, is that "subrogation requires the existence of a contract to pay and the actual payment of the claim." Id.; see also May Dep't Store v. Ctr. Developers, 266 Ga. 806, 808 (1996) ("Subrogation requires the existence of a contract to pay (insurance) and the actual payment of the claim; in the absence of insurance and payment thereunder, there can be no subrogation."); Rabun & Assocs. Constr., Inc. v. Berry, 276 Ga. App. 485, 489 n.3 (Ga. Ct. App. 2005) (stating that "[s]ubrogation could not occur under the proof of loss forms until the settlement payment was made, as the right to subrogation must be supported by valuable consideration, i.e., payment").  That is, "[u]ntil the surety is called upon to perform its obligation under a payment or performance bond . . . the right of subrogation is an inchoate one, which becomes choate only upon the maturing and performance of the obligation to pay." Cotton States Mut. Ins. Co. v. Citizens and S. Nat'l Bank, 168 Ga. App. 83, 86 (Ga. Ct. App. 1983).

Great American does not allege that it has made any payment under the performance bond.  In fact, it admits that it is "cognizant" of the authority holding that a surety is not subrogated to the rights of its principal until the surety pays the

obligation.  (Resp. to Mot. to Dismiss Great American Counterclaim [24], at 10.)

Great American argues, however, that this only affects its ability to *enforce* its

subrogated rights, and at this point in the litigation, it is "merely seeking to

preserve its rights subject to the contingency that Great American may be liable to

Plaintiff upon final disposition of this litigation."  (Id.)  Great American does not

offer any authority for its proposition that while it cannot enforce any of

McArthur's rights, it can still assert claims based on subrogation in order to

"preserve its rights."  Under Georgia law, a surety is not subrogated to the rights of

its principal until the surety pays the obligation.

Great American also argues that it is a fundamental principle that a surety

has a right of subrogation not only to the rights and remedies of a creditor, but also

to those of the principal on the bond.  While this general proposition is true, it is

irrelevant here.  Moreover, the cases cited by Great American to support its

argument do not apply.  A review of the cases cited by Great American is helpful.

In Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F. Supp. 2d 1340

(N.D. Ga. 2001), the court held that "[u]nder the doctrine of subrogation, *if an*

*insurer makes a payment under compulsion of law*, the insurer may be entitled

to . . . step into the shoes of the insured and assert any cause of action against a third party that the insured could have asserted . . . *had the insured not been compensated by the insurer*." Arrow, 136 F. Supp. 2d at 1352 (emphasis added). Another case upon which Great American relies, Md. Cas. Co. v. United States, 32 F. Supp. 746, 754 (Ct. Cl. 1940), also states the accepted principle that "[t]he right of subrogation extends not only to the rights and remedies of the creditor but also to those of the principal on the bond. *By reason of the payment of the bond*, the plaintiff became subrogated to all the rights of the taxpayer . . ." Md. Cas. Co., 32 F. Supp. at 754.[1] Great American ignores the requirement stated in these cases

---

[1] Great American also relies on St. Paul Fire & Marine Ins. Co. v. United States, 370 F.2d 870, 872 (5th Cir. 1967), a case outside this circuit which does not appear to be based on Georgia law. In St. Paul, the United States sued a principal and surety to collect additional import duties on goods sold by the principal. Relying on the doctrine of subrogation, the surety then asserted a third-party claim against the partnership to which the goods were sold. The United States District Court for the Southern District of Florida held the surety had no right to assert such claims through subrogation. On appeal, the Fifth Circuit stated that "[t]he doctrine of subrogation does not permit a surety to move into the shoes of the debtor, whose performance was assured; but rather it restricts the surety to the position of creditor, whose claim has been paid by the surety." Id. at 873. The court appeared to base its holding on a theory of unjust enrichment. It stated: "for [the surety] to bear the cost and expense of these import duties without being able to recoup from the partnership by being subrogated to the rights of [the principal] is unjust enrichment in every sense of the word." Id. The court held that the surety, who was liable to the government for payment of duties, could subrogate to the claims of the debtor and seek reimbursement from the partnership who sold the imported

that payment must be made on an obligation before a party is subrogated to another's rights.  These cases do not support Great America's position that a surety is subrogated to the rights of a principal even if the surety does not make  any payment under the bond.  There is no support for this proposition and it will not be applied here.

Because Great American has not made payment on the performance bond, it is not subrogated to McArthur on the bond.  Great American's counterclaims are thus required to be dismissed.[2]

C.      Plaintiff Manhattan's Motion to Consolidate

Manhattan also moves the Court to consolidate this action with the McArthur Action.  A district court has broad discretionary authority under Federal Rule of Civil Procedure 42(a) to consolidate cases.  See Hendrix v. Raybestos-

_____

goods and presumably gained financial benefit from the surety's payment of the duties.  St. Paul is not authority for Great American to assert claims against Plaintiff based upon subrogation when it has not made payment on the performance bond.

[2]  In its Response, Great American appears to assert that its Counterclaim is based on the theory of recoupment.  Recoupment is not pled in Great American's Counterclaim.  See (Resp. to Mot. to Dismiss Great American Counterclaim, at 12.)  To the extent that this constitutes an attempt to amend its pleadings, the amendment is untimely and the Court will not consider it now.

Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985) (stating that a "district court's decision under Rule 42(a) is purely discretionary"); see also In re Air Crash Disaster at Florida Everglades on December 29, 1972, 549 F.2d 1006, 1014 (5th Cir. 1997) ("A trial court has managerial power that has been described as the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). Consolidating actions where appropriate can help avoid needless duplication of time, effort and expense on the part of the parties and the Court in discovery and at trial. In re Air Crash Disaster, 549 F.2d at 1014. In deciding whether to exercise its discretion to consolidate, the Court should consider "the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a

single one, and the relative expense to all concerned." Hendrix, 776 F.2d at 1495.

These factors weigh in favor of consolidation in this case.

Both the Manhattan Action and the McArthur Action arise from a common transaction or occurrence, namely the construction of Hillgrove High School.  In this action, Manhattan seeks damages from McArthur and its surety, Great American, for breach of the subcontract.  In the McArthur Action, McArthur seeks damages from the Manhattan Sureties for Manhattan's failure to pay it for electrical work under the same subcontract.  The central issue in both suits is the adequacy of McArthur's performance on the project and whether Manhattan was justified in terminating McArthur.  Essentially, it is a question of who breached the subcontract between the parties.

McArthur points out that its claims against the Manhattan Sureties are based on their actions following their receipt of notice of McArthur's claim for payment. This issue, however, ultimately arises from the same construction project, involves the same factual circumstances, similar parties, and common questions of law and fact.  In both cases, it will be necessary to determine if Manhattan was justified in declaring McArthur in default and withholding the remaining funds due McArthur under the subcontract.  Both Manhattan's and McArthur's respective claims

against the other's surety or sureties is dependent upon resolution of this issue. The Court finds it is in the interests of judicial economy and conservation of resources to consolidate the Manhattan Action and the McArthur Action.

In its Response, McArthur "acknowledges that a single trial and discovery process would be of benefit to all parties" and it is "fully aware and cognizant of the policy behind consolidation." (Resp. to Mot. to Consolidate [26], at 3, 5.) McArthur, however, requests that if this Court grants the Motion to Consolidate, the Court "carefully limit itself and contain specific statements and instructions maintaining the separate identify and character" of the two cases. (Id. at 5.) The issue of how or whether to maintain the separate identities of the two cases is more appropriately addressed after consolidation. Plaintiff's Motion for Consolidation is granted, and a Rule 16(a) conference to discuss the processing of the case will be scheduled.

D.    Manhattan's Motion to Strike and/or Dismiss Counterclaim of
       Defendant McArthur

Manhattan asks the Court to dismiss almost all of McArthur's counterclaims. (Mot. to Dismiss McArthur Counterclaim [13].) Manhattan asks the Court to strike or dismiss McArthur's Count II and II on the grounds that they are redundant

under F.R.C.P. 12(f) and fail to state a claim under Rule 12(b)(6).  Manhattan

argues Counts IV, V, VI, VII, VIII, IX, X, XI, XII and XIV should be dismissed

for failure to state a claim.[3]

        *a.*     *Substantial Default and Wrongful Repudiation (Counts II and III)*

       In Counts II and III of its Counterclaim, McArthur asserts claims against

Manhattan for "substantial default" under the subcontract and "wrongful

repudiation" under the subcontract.  Manhattan argues this Court should strike

these counts because they are redundant of McArthur's breach of contract claim in

Count I.  Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party

may move to strike "any insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter" within the pleadings.  Fed. R. Civ. P. 12(f).

"Rule 12(f) motions to strike on any of these grounds are not favored, often being

considered purely cosmetic or time wasters," and "there appears to be general

judicial agreement . . . that they should be denied unless the challenged allegations

have no possible relation or logical connection to the subject matter of the

---

[3] McArthur, by asserting its kitchen sink set of claims, many of which are overlapping and facially suspect, has unnecessarily complicated the adjudication of the merits of this case.  This strategy creates litigation inefficiency and the unnecessary expense of time and money.

controversy."  5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and</u>
<u>Procedure</u> § 1382, at 434-36 (3d. ed. 2004).

"The court enjoys broad discretion in determining whether to grant or deny
these motions to strike. . . . Partly because of the practical difficulty of deciding
cases without a factual record, it is well established that the action of striking a
pleading should be sparingly used by the courts.  It is a drastic remedy to be
resorted to only when required for the purposes of justice."  <u>Quitto v. Bay Colony</u>
<u>Golf Club, Inc.</u>, No. 2:06-cv-286-FtM-29DNF, 2006 U.S. Dist. LEXIS 93959
(M.D. Fla. Dec. 29, 2006); <u>see also</u> <u>Augustus v. Bd. of Pub. Instruction</u>, 306 F.2d
862, 868 (5th Cir. 1962) (stating that motions to strike are disfavored and rarely
granted); <u>Clark v. Atlanta Univ., Inc.</u>, 65 F.R.D. 414, 414 (N.D. Ga. 1974) ("Rule
12(f) motions to strike are generally disfavored.").  It is "the generally accepted
view that a motion to strike for redundancy ought not to be granted in the absence
of a clear showing of prejudice to the movant. . . . Modern litigation is too
protracted and expensive for the litigants and the court to expend time and effort
pruning or polishing the pleadings."  5C Charles Alan Wright & Arthur R. Miller,
<u>Federal Practice and Procedure</u> § 1382, at 457-58.  Manhattan does not argue that it
would be prejudiced if the allegedly duplicative claims remain.

The relevant portions of the counterclaims at issue are as follows:

### Count I–Material Breach of Contract

79.

Under the Subcontract and the General Contract, Manhattan was obligated to pay McArthur promptly and in full for all work performed on and/or services provided to the Project by McArthur.

80.

Manhattan materially breached its obligations under the Subcontract by, among other things, failing to pay McArthur promptly and in full for all of the work performed and/or services provided to the Project by McArthur, by failing to provide the detailed CPM Schedule called for under the Contract, by refusing to compensate McArthur for extra expenses incurred attempting to meet a unilaterally shortened work period, and by failing to reimburse McArthur for expenses incurred as a result of the actions of Manhattan's other subcontractors.

### Count II–Manhattan's Substantial Default Under the Contract

83.

Manhattan's actions as identified above constitute a substantial default under the terms of the Subcontract.

### Count III–Wrongful Repudiation of the Subcontract by Manhattan

86.

As noted above, beginning in December 2005, Manhattan began a pattern of falsely swearing to the Owner that it had, in fact, paid McArthur for McArthur's work.

87.

This false certification by Manhattan was necessary for Manhattan to receive payment on its Payment Applications submitted to the Owner.

88.

These actions by Manhattan constitute a repudiation of the Subcontract by Manhattan.

89.

Manhattan also repudiated the Subcontract by bringing Cleveland on to the Project in an amount to be proven at trial.

90.

Manhattan further repudiated the Subcontract by wrongfully declaring in February 2006 that McArthur could only finish a portion of the work called for under the Subcontract. . .

In Count II, McArthur asserts no additional or different facts in support of its claim for substantial default. It merely states that the facts alleged in Count I also support Count II. Even liberally construing McArthur's claims, the Court finds that McArthur's counts for breach of contract and substantial default are redundant, and Count II adds nothing to McArthur's Counterclaim. Although motions to

-18-

strike are generally disfavored, the Court finds it is appropriate to strike McArthur's claim for substantial default.

McArthur's claim for wrongful repudiation, while unnecessary to the relief it requests, will not be dismissed at this time, because McArthur asserts additional, different facts to support the claim.  This claim is overlapping and redundant of the breach of contract claim, but because motions to strike are generally disfavored, and Count III is not facially identical to Count I, the Court declines to exercise its discretion by striking Count III.

Manhattan also argues that McArthur's claim for wrongful repudiation should be dismissed for failure to state a claim upon which relief can be granted because it does not seek relief independent of the relief sought in McArthur's breach of contract claim.  Manhattan does not argue that there is no cause of action under Georgia law for wrongful repudiation of a contract.  Manhattan does not cite any authority for its argument that the claim should be dismissed, but simply argues that wrongful repudiation is duplicative of a claim for breach of contract.

Under the Federal Rules, a party is permitted to plead in the alternative and set forth alternative theories of recovery, regardless of consistency.  Fed. R. Civ. P. 8(e)(2).  McArthur has alleged facts in its Complaint that support its claims for

breach of contract and wrongful repudiation.  McArthur likely will be unable to recover under both of these theories, but the question of which, if either, of these claims should be litigated is best resolved after discovery and more complete briefing by the parties at the summary judgment stage.  Manhattan's motion to dismiss Count III of McArthur's counterclaim is therefore denied.

b.    *Equitable Lien and Constructive Trust (Count IV)*

In its Counterclaim, McArthur asserts a claim for enforcement of equitable lien and constructive trust.[4]  It alleges that McArthur is entitled to an equitable lien and constructive trust on all funds wrongfully obtained by Manhattan from the CCSD by false swearing that it had paid money due to McArthur.  (Counterclaim [9], at ¶¶ 92-94.)  Manhattan argues that this claim must be dismissed because equitable liens and constructive trusts are equitable remedies, and McArthur possesses an adequate remedy at law.  (Pl. Mot. to Dismiss McArthur Counterclaim, at 9.)  Manhattan also argues that McArthur cannot assert a claim

---

[4]  "O.C.G.A. § 53-12-93(a) provides that a constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity.  It is a remedial device created by a court of equity to prevent unjust enrichment."  Jonas v. Jonas, 280 Ga. App. 155, 162 (Ga. Ct. App. 2006).

for equitable lien against Manhattan because an equitable lien may only be

maintained against the owner of the project, not the general contractor.  McArthur

responds that it is entitled to plead claims seeking a legal and an equitable remedy.

Manhattan first argues that an equitable lien may not be maintained against it

because it is the general contractor on the project, not the owner.  The Court

agrees.  "[A] subcontractor may have an equitable lien in funds held by the county

but belonging to another–such as funds already earned by a general contractor but

not yet paid over to it when it becomes insolvent.  In such a situation, the

subcontractor's lien would allow its claim priority over the claims of the insolvent

contractor's other creditors.  Under this theory, [the subcontractor] has a claim

based on an equitable lien only if and to the extent [the county] is holding a fund of

monies earned by [the general contractor] but not yet paid to it."  Dekalb County v.

J & a Pipeline Co., 263 Ga. 645, 651 (1993) ("It is merely an equitable remedy

whereby [a subcontractor] seeks access to funds which are being held by [the

county], but which belong to the general contractor.  If, under [the county's]

contract with the general contractor, money has been actually earned, but has not

been paid to the general contractor, [the county] has no right to retain the funds or

to resist [the subcontractor's] efforts to seek access to them as a means to satisfy its

claim against the general contractor.")  Here, McArthur seeks an equitable lien against Manhattan, the general contractor–not the CCSD, which is the owner of the project.  This is not permitted by Georgia law.

The Court next turns to McArthur's claim for constructive trust.  Manhattan challenges this claim only on the basis that McArthur has an adequate remedy at law.   "It is axiomatic that equitable relief is only available where there is no adequate remedy at law."  Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994).  The Georgia Code specifically provides that "equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law."  O.C.G.A. § 23-1-4; see also Mitsubishi Int'l Corp., 14 F.3d at 1518 (holding that "[c]ases in which the remedy sought is the recovery of money . . . do not fall within the jurisdiction of equity, and although "where money is obtained by fraud, it is held upon a constructive trust for the defrauded person . . . if the remedy at law is adequate a suit in equity cannot be maintained against the fraudulent person").

Other district courts have held, however, that dismissing an equitable count at this early stage is not appropriate "merely because [a claimant] is prohibited under Georgia law from *recovering* under a breach of contract theory and [an

equitable theory]. . . . [The claimant] cannot recover under both [legal] and [equitable claims] but will be required at trial to elect under which of these remedies it wishes to proceed." McBride v. Life Ins. Co. of Va., 190 F. Supp. 2d 1366, 1378 (M.D. Ga. 2002) (denying summary judgment on plaintiff's unjust enrichment claim, where plaintiff filed a complaint alleging fraud and misrepresentation, violation of RICO, breach of contract, and unjust enrichment, because "[a]t trial the jury will be instructed that Plaintiff may recover on his fraud claim or unjust enrichment claim only if the jury finds that there was no breach of contract"); Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co., 679 F. Supp. 1564, 1579 (N.D. Ga. 1987) (denying summary judgment on counterclaimant's alternative grounds for relief on quantum meruit and unjust enrichment where it also asserted breach of contract and conspiracy claims, noting that "[o]f course, [the counterclaimant] can only recover on only one of the three grounds.  At trial the jury will be instructed that [the counterclaimant] may recover on its quantum meruit or unjust enrichment claim only if the jury finds that there was no breach of contract").

The Court finds that it is inappropriate to dismiss McArthur's claim for constructive trust at this time.  McArthur is permitted to assert alternative claims

for relief.  McArthur alleges that all funds wrongfully obtained under false

pretenses are subject to a constructive trust.  (Compl., at ¶¶ 93-94.)  McArthur

alleges that Manhattan misrepresented to the CCSD that it had paid McArthur in

full for the electrical work.  On that basis, Manhattan allegedly received funds

from the CCSD to reimburse it for the electrical work, and McArthur alleges that it

is entitled to the funds Manhattan received for its electrical work.  Manhattan's

motion to dismiss McArthur's counterclaim for constructive trust is denied.[5]

     c.    *Quantum Meruit (Count VIII), Restitution (Count IX), and Set Off and Recoupment (Count X)*

Manhattan argues that McArthur's counterclaims for quantum meruit,

restitution, and set off and recoupment should also be dismissed because McArthur

has an adequate remedy at law.[6]  (Mot. to Dismiss McArthur Counterclaim, at 15.)

_____

[5]  The Court encourages McArthur to consider dismissing unnecessary claims at this stage of the case to avoid the time and expense of unnecessary litigation.

[6]  Manhattan makes a separate argument as to why McArthur's quantum meruit claim should fail.  It submits that under Georgia law, a party "is estopped to recover in quantum meruit where there exists an express agreement."  Gerdes v Russell Rowe Comms., 232 Ga. App. 534, 537 (Ga. Ct. App. 1998).  However, "[t]he reasonable value of extra work performed in addition to what the contract contemplated can be recovered in quantum meruit."  Id.  Though not artfully pled, McArthur's Counterclaim alleges that McArthur incurred "extra expenses . . . attempting to meet a unilaterally shortened work period" and also incurred

As explained above, the Court finds that McArthur is entitled to assert equitable claims in the alternative to a claim on the subcontract, though it ultimately cannot recover under both theories.  While McArthur's shotgun pleading strategy wastes time and resources, including those of the Court, consideration of the viability of these claims if McArthur elects to pursue them is appropriately left for a later stage in the case.[7]

---

expenses "as a result of the actions of Manhattan's [wrongfully hired] subcontractors."  (McArthur Counterclaim, at ¶ 80.)  McArthur, therefore, is not barred from asserting a quantum meruit claim on this basis.

[7] Manhattan also argues that McArthur's claim for set off and recoupment should be dismissed because it is not a claim for affirmative relief, but an affirmative defense to liability.  "[R]ecoupment in Georgia has not been limited to a defensive purpose.  In all cases where recoupment may be pleaded, if the damages of the defendant shall exceed in amount those of the plaintiff, the defendant shall recover of the plaintiff the amount of such excess." Multivision Northwest, Inc. v. Jerrold Elec. Corp., 356 F. Supp. 207, 217-18 (N.D. Ga. 1972); see also O.C.G.A. § 13-7-13 ("Recoupment may be pleaded in all actions ex contractu where the plaintiff is liable to the defendant under the same contract.").  McArthur does not make a similar argument as to its claim for set-off.  See Aetna Ins. Co. v. Lunsford, 179 Ga. 716 (Ga. 1934) ("Recoupment differs from set-off in this: The former is confined to the contract on which the plaintiff sues, while the latter includes all mutual debts and liabilities. Set-off is a defense which does not go to the justice of the plaintiff's demand, but which sets up a demand against the plaintiff.").  McArthur argues that even if set-off is an affirmative defense, the proper relief is not to dismiss, but to treat it as an affirmative defense under Rule 8(c).  See Fed. R. Civ. P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim . . . the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.").  The Court agrees.

*d.     Conversion (Count V)*

Manhattan argues that McArthur's counterclaim for conversion should be dismissed because McArthur's allegations are essentially a breach of contract claim, and a breach of contract does not itself give rise to a tort action.  (Mot. to Dismiss McArthur Counterclaim, at 11.)  As the basis of its conversion claim, McArthur alleges that Manhattan falsely swore to the CCSD that it had paid for electrical work performed by McArthur, and thus, Manhattan was "able to obtain substantial funds which were the rightful property of McArthur."  (McArthur Counterclaim., at ¶ 96.)  McArthur alleges Manhattan received these funds by check after it submitted its bill to the CCSD.

"Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.  Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion."  Decatur Auto Ctr., Inc. v. Wachovia Bank, N.A., 276 Ga. 817, 819 (2003).  A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of

substance to the breach of contract claim, it is mere surplusage.  Faircloth v. A.L. Williams & Assocs., Inc., 206 Ga. App. 764, 766 (Ga. Ct. App. 1992).  Relying on Decatur Auto, McArthur argues that Manhattan's act of receiving a check from the CCSD through deception constitutes conversion.  This argument is unconvincing.

In Decatur Auto, the plaintiff placed a stop payment order on check number 1041 for $30,500.  Although the bank processed the stop payment order and charged plaintiff for doing so, it deliberately chose to honor plaintiff's check and debited plaintiff's account.  The bank then refused to reimburse the plaintiff.  The plaintiff brought suit against the bank, alleging conversion. The trial court granted summary judgment to the plaintiff.  The Court of Appeals reversed, concluding that because plaintiff was not seeking to recover $30,500 in specific, ear-marked dollar bills, conversion was not a cause of action available to it.  The Georgia Supreme Court reversed the Court of Appeals, holding that Georgia law recognizes that a specific check or negotiable instrument can be the subject of conversion.

The Decatur Auto court noted prior precedent provides "that when a plaintiff utilizes conversion to recover a sum of money, the plaintiff must be able to identify the specific money that makes up the claimed sum."  Id. at 819.  "Thus, while a complaint seeking 'three thousand five hundred dollars lawful money of the United

States,' [is] insufficient to state a cause of action for conversion, a complaint seeking 'one hundred silver certificates of five dollars each, one hundred and fifty national bank notes . . . each for ten dollars' . . . states a valid cause of action for conversion because each particular class of bills or notes is described, the denominations of each class are given, and the number of bills or notes of each denomination." Id.

The court noted further that the plaintiff was not attempting to recover specific dollar bills or coins; but it was seeking to recover the value of a specific instrument–check number 1041–in the specific amount of $30,500.  It explained that "a check (and the full value of the intangible rights identified with the check) may be a subject of conversion" and that Georgia law holds that the "law applicable to conversion of personal property applies to instruments," including checks.  Id. at 820 (citing O.C.G.A. § 11-3-104 (c), (f)).  The Supreme Court reasoned that "[c]onversion of checks is actionable because checks designate specific amounts of money for use for specific purposes."  Id.  The court held that "a plaintiff in a conversion action does not need to identify the specific dollars and coins represented by the face value of checks and other negotiable instruments." Id. at 821.

Decatur Auto does not apply here.  McArthur does not allege in its Counterclaim that Manhattan misappropriated a specific check belonging to McArthur that designated a specific dollar amount meant for a particular purpose. Instead, McArthur alleges that it submitted various requests for payment in different amounts to Manhattan, and Manhattan did not pay the aggregate amount alleged.  McArthur does not identify a specific check or other negotiable instrument belonging to McArthur which Manhattan allegedly converted. McArthur essentially seeks payment under the subcontract for work performed in accordance and in fulfillment of the subcontract.  Because McArthur's Counterclaim for conversion is not based on a breach of an independent duty owed to McArthur, otherwise adds nothing of substance to its breach of contract claim, and thus the claim is required to be dismissed.

e.    *Tortious Breach of Contract (Count VI)*

Manhattan next argues that McArthur's counterclaims for conversion and tortious breach of contract should be dismissed because the economic loss rule bars recovery.  "The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort.

Under the economic loss rule, a plaintiff can recover in tort only those economic

losses resulting from injury to his person or damage to his

property . . . ."  <u>GE v. Lowe's Home Ctrs., Inc.</u>, 608 S.E.2d 636, 637 (Ga. 2005).

McArthur argues that its counterclaim falls under the "misrepresentation

exception" to the economic loss rule.  (Resp. to Mot. to Dismiss McArthur

Counterclaim, at 19.)  This exception holds:

> [O]ne who supplies information during the course of his
> business, profession, employment, or in any transaction
> in which he has a pecuniary interest has a duty of
> reasonable care and competence to parties who rely upon
> the information in circumstances in which the maker was
> manifestly aware of the use to which the information was
> to be put and intended that it be so used.  This liability is
> limited to a foreseeable person or limited class of persons
> for whom the information was intended, either directly or
> indirectly.

<u>City of Cairo v. Hightower Consulting Eng'rs, Inc.</u>, 629 S.E.2d 518, 525 (Ga. Ct.

App. 2006).

Manhattan argues that McArthur cannot rely on the misrepresentation

exception because it does not allege that Manhattan made false statements to

McArthur in certifying the work for payment–McArthur alleges that Manhattan

made false statements *to CCSD* regarding the status of the work project.

-30-

McArthur's Counterclaim, however, also alleges that "Manhattan has willfully and wrongfully violated . . . McArthur's statutory rights under the Subcontract including falsely swearing to the [CCSD] and *improperly concealing and manipulating data and information provided to McArthur*."  (Compl., at ¶ 99.) (emphasis added)

For purposes of a motion to dismiss, the Court is required to accept McArthur's allegations as true.  McArthur has alleged in its Counterclaim that Manhattan "improperly concealed and manipulated data and information it provided to McArthur," and this places McArthur's claim for tortious breach of contract slightly within the "misrepresentation exception" to the economic loss rule.  While the Court doubts the viability of this claim, the Court concludes the claim should not be dismissed at this point.

> f.      *Fraud and Deceit (Count VII)*

Manhattan next argues that McArthur's claim for fraud and deceit should be dismissed because it does not meet the requirement under Federal Rule 9(b) that fraud must be pled with particularity.  (Mot. to Dismiss McArthur Counterclaim, at 13.)  McArthur argues that its pleadings meet the requirements of Rule 9(b).

"In Georgia, the common law tort of fraud requires five elements:  (1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff."  Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1331 (N.D. Ga. 2002); see also Ledford v. Smith, 618 S.E.2d 627, 634 (Ga. Ct. App. 2005).

To survive a motion to dismiss, allegations of fraud must satisfy the requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b), which is captioned "Pleading Special Matters," requires: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b); see also United States v. Lab. Corp. of Am. Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  "The notion [of the Rule] is that a heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 31 (3d. ed. 2004).  "A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made, in what documents or oral representations they were made,

who made the statements, the time and place the statements were made, the content of the statements, the manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud.  Carpenters Health & Welfare Fund v. Coca-Cola Co., 321 F. Supp. 2d 1342, 1347-48 (N.D. Ga. 2004). Essentially, Rule 9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud.  In re World Access, Inc., 119 F. Supp. 2d 1348, 1353 (N.D. Ga. 2000).

To demonstrate that it has pled fraud with sufficient particularity, McArthur responds that "for each instance of fraud and deceit, McArthur alleges essentially the same fact pattern."  (Resp. to Mot. to Dismiss McArthur Counterclaim, at 20.) As an example, McArthur directs the Court to Paragraphs 38-43 of its Counterclaim:

38.

On November 28, 2005, McArthur submitted its Payment Request No. 15 to Manhattan seeking payment in the amount of $290,136.00 for work performed on the Project by McArthur during November 2005.  A true and correct copy of McArthur Electric, Inc.'s Pay Request No. 15 is attached hereto as Exhibit D.

39.

Manhattan received McArthur's Pay Request No. 15.

40.

McArthur has never received any payment whatsoever from Manhattan for work reflected on its Pay Request No. 15.

41.

On December 7, 2005, Manhattan submitted its Application No. 18 to the [CCSD] for work performed on the Project during the month of November 2005.  In its Application No. 18, Manhattan billed the Owner for the electrical work which was reflected on McArthur's Payment Request No. 15.

42.

In Application No. 18, Karen Rippeon of Manhattan swore under oath that, "The undersigned Contractor certifies that the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by him for Work for which previous Certificates of Payment were issued and payments received from the Owner and that the current payment shown hereunder is now due."

43.

Manhattan received payment from the Owner for all work billed under its Application No. 18 including the work performed by McArthur.

McArthur alleges this same fact pattern for the billing cycles of December 2005, January 2006, February 2006, March 2006, and April 2006.

"The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." United States v. Lab. Corp., 290 F.3d 1301, 1310 (11th Cir. 2002). Here, McArthur alleges that in its payment applications, Manhattan told the CCSD that it had paid for all subcontracting work. Karen Rippeon made these statements in December 2005, January 2006, February 2006, March 2006, and April 2006, and McArthur specifies the documents in which the statements were made. Importantly, however, McArthur does not allege the manner in which these statements misled McArthur and caused it harm. That is, McArthur does not allege "how" it was defrauded by Manhattan.

In its Counterclaim, McArthur simply states "Manhattan's misrepresentations were reasonably relied upon by McArthur and [the CCSD]." (McArthur Counterclaim, at ¶ 105.) McArthur does not explain how it was induced to rely on these statements and the manner in which it relied. This information is particularly essential where the alleged false statements were not

made to McArthur, but instead to a third party.  McArthur has failed to allege fraud

with sufficient particularity, and Manhattan's motion to dismiss the fraud claim is

granted.

g.      *Breach of Legal Duty to Swear Truthfully (Count XI)*

Manhattan next argues, citing Peters v. Imperial Cabinet Co., Inc., 375

S.E.2d 635, 636 (Ga. Ct. App. 1988), that McArthur's counterclaim for breach of

the duty to swear truthfully should be dismissed because any rights McArthur has

to payment were not extinguished by Manhattan's representations to the CCSD.

(Mot. to Dismiss McArthur Counterclaim, at 17.)  McArthur argues that Peters

recognizes a claim for breach of the duty to swear truthfully, and it alleges a valid

claim under Georgia law.

In Peters, the appellant was the president of AEC, a construction company.

Appellee was a cabinet supplier for the homes AEC constructed.  When the

appellee was not paid for cabinets installed, it filed a lien on the improved

property.  AEC sold the property to a third party the day after the supplier filed the

lien.  At the closing, appellant executed an affidavit in which he swore that there

was no outstanding indebtedness for improvements or repairs to the property.  The

affidavit had the legal effect of preventing the supplier from foreclosing on a lien on the new property owner.  Id. at 635-36.

The Peters court held the supplier's allegation "that appellant knowingly swore falsely, thereby injuring appellee, set forth a cause of action for breach of the legal duty to swear truthfully."  Id. at 636.  The court stated that "[f]alse swearing occurs when a person who executes a document knowing that it purports to be an acknowledgment of a lawful oath or affirmation in any matter or thing other than a judicial proceeding knowingly and wilfully makes a false statement."  Id. (quotations and citations omitted).

Contrary to Manhattan's argument, the Peters court did not condition its holding on the fact that the supplier was legally barred from foreclosing on an equitable lien.  Peters held that the supplier alleged a proper cause of action by alleging that the contractor knowingly swore falsely, "thereby injuring" the supplier.  Manhattan cites no authority other than Peters for its argument that McArthur cannot assert this claim because its legal rights were not extinguished. Manhattan's motion to dismiss McArthur's claim for breach of duty to swear truthfully is denied.

*h.*     *Violation of Georgia Prompt Pay Act (Count XII)*

Manhattan argues that McArthur's counterclaim for breach of the Georgia Prompt Pay Act should be dismissed because Manhattan and McArthur agreed to explicit payment provisions different from those in the Prompt Pay Act.  It argues that any claim for failure to pay must be based on the subcontract rather than the Act.  (Mot. to Dismiss McArthur Counterclaim, at 20-21.)

Georgia's Prompt Pay Act states:

> **Contractors' and subcontractors' entitlement to payment**.  Performance by a contractor or subcontractor in accordance with the provisions of his or her contract and the satisfaction of the conditions of his or her contract precedent to payment entitles such person to payment from the party with whom he or she contracts.

O.C.G.A. 13-11-3.  Under the subsection "Interest on late payments," the Act states:

> **Interest on late payments** -(b) Nothing in this chapter shall prohibit owners, contractors, and subcontractors from agreeing by contract to rates of interest, payment periods, and contract and subcontract terms different from those stipulated in this Code section, and in this event, these contractual provisions shall control.  In case of a willful breach of the contract provisions as to the time of payment, the interest rate specified in this Code section shall apply.

O.C.G.A. § 13-11-7(b).

Manhattan argues that because the parties have a subcontract setting explicit payment provisions, the subcontract controls and McArthur cannot assert a claim under the Act.  McArthur responds that even under § 13-11-7(b), a willful breach of a contract triggers the interest rates provided in the Act, therefore it can allege a cause of action under the Act.

The Prompt Pay Act does not explicitly prohibit an action under the statute when the parties have signed a contract.  Manhattan does not cite any authority holding that an action under the Prompt Pay Act may not be asserted when a plaintiff is a party to a subcontract–either as an alternative pleading or as an additional cause of action.  The Court finds it is inappropriate to dismiss the claim at this time, and Manhattan's motion to dismiss is denied.

I.      *Punitive Damages (Count XIV)*

Manhattan next argues that McArthur's claim for punitive damages should be dismissed.  In its Response, McArthur devotes one sentence to this issue, merely stating that "McArthur has pled causes of actions that make available punitive damages as a form of recovery. . . ."  (Resp. to Mot. to Dismiss McArthur Counterclaim, at 23.)  McArthur does not enumerate the claims on which it is

entitled to recover punitive damages, and because the Court has dismissed all claims upon which punitive damages may be based, the claim must be dismissed.

In its Counterclaim, McArthur alleges that "Manhattan has acted willfully, wantonly and with a conscious indifference and reckless disregard of its duties to McArthur as evidenced by, among other things, Manhattan's wrongful repudiation of the Subcontract, [its] conversion of McArthur's funds, [its] breach of its legal duty to swear truthfully, [and its] fraud and deceit in obtaining funds from Cobb County . . ." (Counterclaim, at ¶ 126.)

"Unless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts." O.C.G.A. § 13-6-10. Furthermore, it is well-settled that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b); see also MDC Blackshear, L.L.C. v. Littell, 273 Ga. 169, 173 (2000). "Something more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages. Punitive damages

cannot be imposed without a finding of culpable conduct based upon either

intentional and wilful acts, or acts that exhibit an entire want of care and

indifference to consequences." Littell, 273 Ga. at 173.

Although allegations of fraud and conversion can support a claim for

punitive damages, the Court has dismissed these claims.  None of McArthur's

remaining claims will support a claim for punitive damages.  See Clark v.

Aenchbacher, 143 Ga. App. 282, 284 (Ga. Ct. App. 1977) (stating that in an action

for breach of contract, where there was fraud, punitive damages can be awarded

because fraud is tortious conduct); Privitera v. Addison, 190 Ga. App. 102, 105

(Ga. Ct. App. 1989) (holding that punitive damages awarded to plaintiff and

cross-claimant against defendant are appropriate for the tort of conversion).  There

is no claim remaining in the case to support a claim for punitive damages.

Manhattan's motion to dismiss McArthur's claim for punitive damages is therefore

granted.

## III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Manhattan's Motion to Dismiss

Counterclaim of Defendant Great American [10] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Consolidate [12] is **GRANTED**.  The Clerk is **DIRECTED** to **CONSOLIDATE** Civil Action Nos. 1:06-cv-1512-WSD and 1:06-cv-1870-WSD.  All future pleadings shall be filed in Civil Action No. 1:06-cv-1512-WSD.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike and/or Dismiss Counterclaim of Defendant McArthur [13] is **GRANTED** in part and **DENIED** in part in accordance with the terms of this Order.

A status conference to discuss consolidation and other issues is set for February 20, 2007.

**SO ORDERED** this 30th day of January, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE